STATE OF MINNESOTA
FOURTH JUDICIAL DISTRICT
COUNTY OF HENNEPIN

| | |
|---|---|
| Andrew Johnson,<br><br>　　　　Plaintiff,<br>　v.<br><br>Officer Vert (Badge No. 7399), Officer Weis (Badge No. 7620), Sergeant Jameil Mohammad (Badge No. 5150) and the City of Minneapolis.<br><br>　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

For his Complaint, the Plaintiff states the following:

## JURISDICTION

1. This action is based on, and seeks redress for, violations of the United States Constitution and Minnesota's common-law therefore jurisdiction is proper pursuant to 42 U.S.C. §1983.

## VENUE

2. Venue is proper in the County of Hennepin pursuant to Minn. Stat. 542.09.

## PARTIES

3. Andrew Johnson, the Plaintiff, is an adult male of who resides, and at all relevant times has resided in the state of Minnesota.

4. Officer Vert (Badge No. 7399) is a licensed peace officer in the State of Minnesota and is employed by the City of Minneapolis, Police Department.

5. Upon information and belief, Officer Vert's first name is Wesley.

6. Officer Weis (Badge No. 7620) is a licensed peace officer in the State of Minnesota and is employed by the City of Minneapolis, Police Department.

Exhibit 2

7. Sergeant Jameil Mohammad (Badge No. 5150) is a licensed peace officer in the State of Minnesota and is employed by the City of Minneapolis, Police Department.

8. The City of Minneapolis employs all of the individual peace officers in this case through its Police Department.

## FACTUAL ALLEGATIONS

9. Plaintiff re-alleges the previous allegations and incorporates those allegations herein by reference.

10. On or about Saturday September 14, 2019, Plaintiff was in downtown Minneapolis with a group of friends.

11. The Plaintiff and his friends were walking from one establishment to another when they heard were someone yelling, "Get the fuck on the ground!"

12. Plaintiff turned around and saw Defendants Vert and Weis screaming and pointing their guns at the Plaintiff and his friends.

13. Plaintiff immediately threw his hands in the air and screamed "don't shoot!"

14. Defendants Vert and Weis kept their guns pointed at the Plaintiff's and his friends and continued to scream, "Get the fuck on the ground!"

15. Before Plaintiff could comply with the order to, "Get the fuck on the ground," Defendant Mohammed grabbed him and put him on the hood of his squad car.

16. Plaintiff was handcuffed.

17. Plaintiff, while handcuffed, asked the Defendants for a reason for the seizure with deadly force.

18. The Defendants and all other officers ignored him.

19. The Defendants then asked the Plaintiff if he had identification.

20. Plaintiff again asked *why* he was being seized and seized with deadly force.

21. The Defendants again ignored his questions.

Exhibit 2

22. An officer uncuffed the Plaintiff so that he could present his identification.

23. Once uncuffed, he presented Defendant Mohammed with his Minnesota Driver's license and his law enforcement identification card.

24. Unbeknownst to the Defendants the Plaintiff is a licensed peace officer.

25. After presenting Defendant Mohammed with a law enforcement identification that indicated Plaintiff's employment as a licensed peace officer, Defendant Mohammed insisted through questioning that Plaintiff was "just a correctional officer."

26. It was not until after Plaintiff insisted that he was a certified/licensed peace officer (and not a corrections officer) that Defendant Mohammed answered the question of *why* the officers had seized the group with deadly force.

27. Defendant Mohammed told the Plaintiff that they had been seized with deadly force because "someone told the officers that someone in the group had a gun."

28. Possession of a gun is not necessarily a crime.

29. And at the time the Defendants seized the Plaintiff and his friends with deadly force they had no information that would suggest that it was a crime for the Plaintiff or his friends to possess a gun.

30. After the Defendants seized the Plaintiff and his friends with deadly force the Defendants did not uncover any information that would suggest that it was a crime for the Plaintiff or his friends to possess a gun.

31. In fact, the Defendants did not find a gun in the possession of the Plaintiff or his friends because the Plaintiff's and his friends were not in possession of a firearm.

32. The Defendants did nothing to verify that the Plaintiff or his friends possessed firearms *before* they seized them with deadly force.

33. Plaintiff told Defendant Mohammed how dangerous it was for them to seize them with deadly force, charging them from the rear, without a reason.

34. Defendant Mohammed responded to Plaintiff, "you don't know how we do shit in Minneapolis."

35. When Plaintiff again told Defendant Mohammed that it was wrong for

3

Exhibit 2

officers to point guns at citizens who are just walking down the street, Defendant Mohammed responded again, "You don't know how we do shit in Minneapolis. Do you even work the streets?"

36. Defendant Mohammed then promised to write a report on the incident.

37. Plaintiff has on multiple occasions attempted to retrieve a copy of the incident report from the Minneapolis police.

38. But Defendant Mohammed never wrote a report but instead logged the seizure as an "Officer Assist," call.

39. Likewise, Plaintiff made multiple attempts to recover any bodycam or squad video of the seizure with deadly force.

40. On September 17, 2019, for instance, the Plaintiff went to the records department of the Minneapolis Police Department to recover the body cam/squad video.

41. The records clerk viewed the bodycam video but before the video ended, she called a supervisor over to view the video as well.

42. Both the clerk and her supervisor found that there were no open investigations that would prevent them from providing the Plaintiff with a copy of the video.

43. They, nonetheless, called in a third employee, John A. Elder (Director of Public Information) and the three employees watched the video together again.

44. Eventually, Elder took the Plaintiff to his office and promised that he would report the incident directly to the Chief of Police, with whom he had lunch scheduled for that day.

45. Elder also promised to do an audit of the body camera video of the incident.

46. Plaintiff then left a copy of his written complaint with Elder and indicated that he was going to return to the clerk's office for a copy of the video.

47. Elder advised the Plaintiff that he could not get a copy of the video because their "video system just crashed."

48. Upon information and belief, there was no failure of the video system on September 17, 2019, that prevented the City from giving the Plaintiff a copy

Exhibit 2

of the videos.

49. Elder promised to send the video to the Plaintiff but never did.

50. Plaintiff has tried to get a copy of the video after that September 17, 2019, but again, the City has refused to provide him a copy.

## CLAIMS FOR RELIEF

## COUNT I
## UNREASONABLE SEIZURE

51. Plaintiff re-alleges the previous allegations and incorporates those allegations herein by reference.

52. Defendants violated the Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizure by seizing them without probable cause and with deadly force.

53. Defendants violated the Plaintiff's rights under the Fourth Amendment to be free from excessive force in seizing the Plaintiff by using deadly force.

54. In so doing, the Defendants imposed terror on the Plaintiff and caused him significant harm.

## COUNT II
## COMMON-LAW ASSAULT

55. Plaintiff re-alleges the previous allegations and incorporates those allegations herein by reference.

56. When the Defendants pointed their loaded firearms at the Plaintiff, they caused the Plaintiff to believe his very life was in their cross hairs.

57. The Defendants did not have a lawful reason to use deadly force.

58. In so doing, the Defendants imposed terror on the Plaintiff and caused him significant harm.

## COUNT III
## COMMON-LAW BATTERY

59. Plaintiff re-alleges the previous allegations and incorporates those allegations herein by reference..

Exhibit 2

60. When the Defendants grabbed the Plaintiff and handcuffed him they committed a battery because:

   a. The Plaintiff did not consent to the touch.
   b. The Defendants had no lawful authority to touch the Plaintiff
   c. Plaintiff was harmed by the Defendants' touch.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief against the Defendants as follows:

61. For redress of all loss, harm, and injuries that resulted from the Defendants' unconstitutional acts.

62. For interest, where appropriate, on damages awarded.

63. For cost and attorneys' fees incurred in the prosecution of this action pursuant to, without limitations, 28 U.S.C. §1988 and Minn. Stat. §§363A.29 and 363A.33, Subd. 7.

64. Award such other relief as the Court deems just and equitable.

Dated: October 5, 2020         Respectfully submitted

                               A. L. Brown (# 331909)
                               **Capitol City Law Group, LLC**
                               **The Allen Building**
                               287 East Sixth Street, Suite 20
                               Saint Paul, Minnesota 55101
                               Telephone (651) 705-8580
                               Facsimile (651) 705-8581
                               E-Mail: A.L.Brown@cclawg.com

                               **ATTORNEYS FOR PLAINTIFF**

Exhibit 2